IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **DAVID EASLEY,** | CASE NO. 3:18 CV 2050 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **NICHOLAS ZIMMERMAN, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

### INTRODUCTION

Plaintiff David Easley, a prisoner incarcerated at Toledo Correctional Institution, brings this action against twelve prison employees under 42 U.S.C. § 1983. *See* Doc. 31 (Amended Complaint). Currently pending before the Court is Defendants' Motion for Summary Judgment, filed on March 30, 2021. (Doc. 38). Plaintiff has not filed an opposition despite multiple extensions, and the time in which to do so has expired. *See* Non-document entries dated June 22, 2021, August 25, 2021, September 2, 2021, September 9, 2021.

For the reasons discussed below, Defendants' Motion is granted.

### BACKGROUND

At all times relevant to the instant case, Plaintiff was an inmate at the Toledo Correctional Institution ("TCI"). He brings this suit against Defendant Correctional Officers Nicholas Zimmerman, Steve Hughes, Mark Poupard, Kent Wallace, and Mr. Creegold; and prison medical providers Elizabeth Peterson Hughes, Lasha Johnson, Maggie Jedlinsky, Teresa Jamison Moorman, Meredith Rinna, Stephen Stocker, and Dr. Cheryl Lee. *See* Doc. 31.

In his Amended Complaint (Doc. 31), Plaintiff asserts multiple actions and inactions by prison officials from 2017 to 2019 violated his constitutional rights. He broadly alleges certain

Defendants were deliberately indifferent to his serious medical needs, both physical and mental. He additionally asserts he was unfairly disciplined for actions related to his mental health issues, including the removal of a mattress from his cell. He further brings retaliation claims related to an increased security level status. Finally, Plaintiff brings claims that certain Defendants used excessive force against him on two separate occasions.

Defendants move for summary judgment, arguing Plaintiff failed to exhaust many of his claims, and that he cannot demonstrate an issue of material fact about the remainder. They cite and attach the following in support: (1) the Affidavit of Sonrisa Sehlmeyer, Warden's Assistant at TCI (Doc. 38-1); (2) the Affidavit of Michael Jenkins, Institutional Inspector at TCI (Doc. 38-2); (3) Plaintiff's grievance history (Ex. A, Doc. 38-3); (4) a query regarding use of force reports involving Plaintiff (Ex. B, Doc. 38-4): (5) reports regarding the use of force against Plaintiff on November 20, 2017 and June 18, 2018, respectively (Exs. C & D, Docs. 38-5 & 38-6); and (6) Plaintiff's prison disciplinary history (Ex. E, Doc. 38-7).

Sehlmeyer authenticates Defendants' Exhibits B through E (Doc. 38-1), and Jenkins authenticates Defendants' Exhibit A, Plaintiff's grievance history (Doc. 38-2). Jenkins further avers he has thoroughly reviewed Plaintiff's grievance history, and Plaintiff "failed to exhaust his administrative remedies as it relates to all allegations in his Complaint against Defendants Rinna, Lee, Jamison, Stocker, Jedlinsky" and "failed to exhaust Deliberate Indifference claims against Defendants Hughes, Cregold [*sic*], Johnson, Wallace, Zimmerman, and Poupard.". *Id.* at ¶ 12.

Given the number of independent claims and in the interest of clarity, the Court sets forth the relevant factual background of each claim below in conjunction with its discussion thereof.

2

**STANDARD OF REVIEW**

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

When faced with an unopposed motion for summary judgment, the Court may not use the party's failure to respond as a reason for granting summary judgment "without first examining all the materials properly before it under Rule 56(c)." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (quoting *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979)). This is so because "[a] party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the

3

movant." *Id.* (quoting *Smith*, 600 F.2d at 64). Therefore, even where a motion for summary judgment is unopposed, a court must carefully review the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists. *Id.* However, "[n]either the trial nor appellate court . . . will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992).

### DISCUSSION

Plaintiff asserts three counts in his Amended Complaint, each based on various allegations: (1) deliberate indifference to serious medical needs, (2) excessive force, and (3) retaliation. Defendants move for summary judgment on all counts, under several theories. First, they assert any "official capacity" claims are barred by sovereign immunity and the Eleventh Amendment. Second, they assert entitlement to qualified immunity on Plaintiff's claims. Third, they assert Plaintiff only properly exhausted his excessive force claims against Zimmerman, Poupard, Wallace, Hughes, and Creegold and the remaining claims must be dismissed as unexhausted. Fourth, they contend on the merits Plaintiff cannot show a genuine issue of material fact regarding any claim. Again, Plaintiff has not responded to the pending motion. For the reasons discussed below, the Court finds Defendants are entitled to summary judgment.

Sovereign Immunity ("Official Capacity" Claims)

Defendants first contend any "official capacity" claims are barred by the Eleventh Amendment. This is so, they assert, because "Ohio has not waived its sovereign immunity, and Congress did not disturb the states' Eleventh Amendment immunity when it passed 42 U.S.C. § 1983." (Doc. 38, at 10) (citing *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992)).

4

Plaintiff asserts claims against Defendants in their "professional" as well an individual capacities. (Doc. 31, at 1-3).[1] A suit against a state official operates as an action against the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). The State of Ohio has not waived its sovereign immunity, nor has it consented to civil rights suits in federal court. *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Thus, Plaintiff's official capacity claims are barred by sovereign immunity, and Defendants are therefore entitled to summary judgment thereon. *WCI, Inc. v. Ohio Dep't of Pub. Safety*, -- F.4th --, 2021 WL 5351864, at *2 (6th Cir. Nov. 17, 2021).[2]

Unexhausted Claims

Next, Defendants contend most of Plaintiff's claims are barred by the Prison Litigation Reform Act's ("PLRA") exhaustion requirement. Upon review, the Court agrees.

Before bringing a civil rights action under 42 U.S.C § 1983, an inmate must exhaust available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 736 (2001); PLRA, 42 U.S.C. § 1997e(a). "An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)

---

1. The Court interprets Plaintiff's use of "professional capacity" as the equivalent of "official capacity".

2. The Sixth Circuit recently explained that although "courts have often treated Eleventh Amendment immunity and sovereign immunity as interchangeable . . . . as a matter of original meaning, the two are conceptually distinct." *WCI, Inc.*, 2021 WL 5351864, at *2. It distinguished immunity under the Eleventh Amendment as sounding in subject-matter jurisdiction and containing a diversity requirement from sovereign immunity which "refers to a state's right 'not to be amenable to the suit of an individual without its consent'", sounds in personal jurisdiction, and does not require diversity. *Id.* (citing The Federalist No. 81, at 486 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis omitted)). Here, Plaintiff is housed in an Ohio prison and sues Ohio prison officials. Therefore "[b]ecause the parties are not diverse, sovereign immunity applies, and the Eleventh Amendment, by its plain terms, does not." *Id.* at *3.

(quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 95 (2006)); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("A prisoner must adhere to the institutional grievance policy . . .").

Ohio has a three-step prison grievance system: (1) an informal complaint (or "ICR"); (2) a notification of grievance to the inspector of institutional services (or "grievance"); and (3) finally, an appeal to the office of chief inspector (or "appeal"). Ohio Admin. Code § 5120-9-31(J)(1)-(3). Thus, the Ohio administrative grievance process is satisfied, and a claim fully exhausted, only when an inmate pursues review at all three levels. *See Pack v. Martin*, 174 F. App'x 256, 262 (6th Cir. 2006) (noting the Sixth Circuit "has interpreted the PLRA's exhaustion requirement to be satisfied if a Plaintiff files a grievance granting the prison 'fair notice' of the claim and appeals the denial of the grievance to the highest possible level").

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Under Ohio's grievance procedure,

> [i]nformal complaints and grievances must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved and the name or names of any witnesses. Specificity of the complaint provides institutional staff the opportunity to investigate the complaint and to take corrective action to address a valid complaint.

Ohio Admin. Code § 5120-9-31(K).

Exhaustion is mandatory under the PLRA, and unexhausted claims will not be heard in court. *Bock*, 549 U.S. at 211; 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The "dominant concern" of the PLRA is "to promote administrative redress, filter

out groundless claims, and foster better prepared litigation of claims aired in court." *Porter v. Nussle*, 534 U.S. 516, 528 (2002); *see also Reed-Bey*, 603 F.3d at 324 ("The point of the PLRA exhaustion requirement is to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court.") (internal citation and quotation omitted). Requiring inmates to exhaust remedies in the manner the State provides "by, say, identifying *all* relevant defendants—not only furthers these objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process." *Reed-Bey*, 603 F.3d at 324-25.

Because "[n]on-exhaustion is an affirmative defense under the PLRA", Defendants bear the burden of proof, and thus "summary judgment is appropriate only if [Defendants] establish[] the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

Defendants assert Plaintiff has only properly exhausted his excessive force claims against Defendants Zimmerman, Poupard, Wallace, Hughes, and Creegold for the events of November 20, 2017 and June 18, 2018, and that all other claims must be dismissed as not properly exhausted. (Doc. 38, at 6).³ The Court therefore turns first to these allegedly unexhausted claims.

---

3. Whether by accident or intentionally, the prior Judge assigned to this case did not mention Defendant Creegold in an earlier partial dismissal order (Doc. 5) despite Creegold being named in the original complaint (Doc. 1, at 6). Defendants therefore "assume claims against Defendant Creegold were not permitted to proceed" (Doc. 38, at 9); however, they also address those claims on the merits, *see, e.g.*, Doc. 38, at 17. In an abundance of caution and the interest of completeness, the Court will consider the claims against Defendant Creegold.

Deliberate Indifference – November 20, 2017

Plaintiff asserts a deliberate indifference claim against Defendants Poupard, Zimmerman, and Wallace for their actions on November 20, 2017. *See* Doc. 31, at ¶¶ 19-20, 37.[4] He alleges he requested mental health medical care and his request was ignored. *See id.*

Although Plaintiff filed a grievance about the November 20, 2017 incident, he only described facts related to being assaulted and sprayed with mace. *See* Ex. A, Doc. 38-3, at 5-6, 21, 22); (Jenkins Aff., Doc. 38-2, at ¶ 12). He did not include facts or complaints related to any requests for – and denial of – medical care. *See id.* As such, he did not properly exhaust this claim and the Defendants are entitled to summary judgment. *See Reed-Bey*, 603 F.3d at 324 (inmate must "tak[e] advantage of each step the prison holds out for resolving the claim internally"); Ohio Admin. Code. § 5120-9-31(K).

Deliberate Indifference/Retaliation Claim Regarding Removal of Mattress

Plaintiff asserts both a deliberate indifference and a retaliation claim against Defendant Rinna for the removal of his mattress from his cell from November 6 to 14, 2017. (Doc. 31, at ¶¶ 26, 35, 52). Plaintiff did not properly exhaust this claim. Although Plaintiff raised claims regarding the mattress removal at both the informal complaint level and the grievance level, he never raised such a claim to the third level – an appeal. *See* Ex. A, Doc. 38-3, at 4-6, 21-22; Jenkins Affidavit,

---

4. The Court cites the allegations in Plaintiff's Amended Complaint simply to provide context for the claims raised; the Amended Complaint itself is not admissible evidence the Court can consider. *See, e.g.*, *Shreve v. Franklin County*, 743 F. 3d 126, 131 (6th Cir. 2014) ("[T]he evidence in the record, not the pleadings, governs whether a party has raised a genuine dispute of material fact sufficient to survive a motion for summary judgment.").

Doc. 38-2, at ¶¶ 6, 12. As such, Defendant Rinna is entitled to summary judgment on these claims.[5] *See Pack*, 174 F. App'x at 262.

<u>Deliberate Indifference for Failure to Provide Medical Treatment (Aug.-Nov. 2017)</u>

Plaintiff asserts a deliberate indifference claim against Defendants Rinna and Lee for failure to provide mental health medications and medical treatment. *See* Doc. 31, at ¶¶ 22, 23, 35, 36, 38, 40. Specifically, he asserts from August to November 2017, Lee and Rinna refused to provide Plaintiff his necessary mental health medications, and, as a result, his mental state deteriorated and he was placed on suicide watch. *See id.* at ¶¶ 22-23.

Defendants argue that, although Plaintiff did attempt to pursue all three steps of the administrative grievance process on this claim, he did so outside of the required fourteen-day time frame required and thus the claim was not properly exhausted. This is accurate. On August 13, 2017, Plaintiff filed an ICR asserting Lee "wrote false reports" regarding Plaintiff's blood draw levels and he was denied medications as a result. (Ex. A, Doc. 38-3, at 28). This ICR was denied, *id.*, and Plaintiff did not pursue it further, *see id.* at 12. On December 27, 2017, Plaintiff filed a second ICR asserting Lee and Rinna refused him medication and lied in medical reports in order to withhold medication. *Id.* at 26. The ICR was denied, *id.*, and Plaintiff again did not pursue it further, *see id.* at 12. On January 11, 2018, Plaintiff filed a third ICR, asserting similar claims. (Ex. A, Doc. 38-3, at 7) ("[D]octor Lee took my medication [due] to a blood draw I never had in [September] 2017 . . . [and] Rinna made false claims to justify and back [L]ee up[.]"). The ICR was denied because as filed beyond the fourteen-day timeframe set forth in Ohio Administrative

---

5. Even were the Court to reach the merits of this claim, it would fail. *See, e.g.*, *Jones v. Toombs*, 77 F.3d 482 (6th Cir. 1996) (unpublished table disposition) (finding denial of a mattress and requiring inmate to sleep on the floor for up to four weeks does not violate the Eighth Amendment).

Code § 5120-9-31. *Id.* Plaintiff attempted to escalate this claim to a grievance and again to an appeal, but was denied each time based on the untimeliness of the original ICR. *See id.* at 7-8.

Plaintiff's deliberate indifference claims regarding denied medications, withheld medications, and falsified medical records were not fully exhausted. *See* Ex. A, Doc. 38-3, at 7-8, 12, 26, 28. Thus, Defendants Lee and Rinna are entitled to summary judgment on this claim. *See Risher*, 639 F.3d at 240 ("To exhaust his administrative remedies, a prisoner must adhere to the institutional grievance policy, including any time limitations.").

Retaliation & Disclosure of Confidential Information

Plaintiff's Amended Complaint asserts Defendants Jedlindky, Rinna, and Lee retaliated against him and caused the Rules Infraction Board to increase his security level. (Doc. 31, at ¶¶ 27-29). He further asserts that on November 18, 2017, Jedlinsky and Rinna "disclosed private and confidential information to two Officers of the Disciplinary Panel . . . and disclosing it put plaintiff at risk of harm from other inmates" and they "further failed to protect plaintiff's confidentialities and privacy rights by conducting plaintiff's counseling sessions in front of 15 to 20 inmates and C.O.s." *Id.* at ¶¶ 30-31.

Defendants contend Plaintiff has failed to exhaust any such claim and none of the allegations appear in any grievance documents filed around the given date of November 18, 2017. Plaintiff filed two complaints in the month of November and neither of them were against these Defendants. *See* Ex. A, Doc. 38-3, at 12; *see also id.* at 21 (raising claims regarding mattress denial and alleged assault by Zimmerman and Poupard); Jenkins Aff., Doc. 38-2, at ¶ 12. Plaintiff has not pointed to any contrary evidence demonstrating he exhausted such a claim, and therefore has not demonstrated a genuine issue of material fact. Defendants are entitled to summary judgment on this claim.

Deliberate Indifference/Retaliation for Failure to Provide Medical Treatment - April 2018

Plaintiff asserts that on April 16, 2018, while being held in solitary confinement, Defendants Jamison, Rinna, and Stocker failed to provide him with medical or mental health treatment after he set himself on fire. (Doc. 31, at ¶¶ 32, 25, 52). He asserts this both as a deliberate indifference and retaliation claim. *See id.*

As Defendants point out, Plaintiff filed an ICR regarding this incident, but did not name any specific individual in the complaint, nor did he pursue administrative exhaustion beyond the initial step. *See* Ex. A, Doc. 38-3, at 9; Jenkins Aff., Doc. 38-2, at ¶ 12. Defendants Jamison, Rinna, and Stocker are therefore entitled to summary judgment on this claim.

Deliberate Indifference – June 2018 Incident

Plaintiff asserts that, following an assault on June 18, 2018, he requested medical treatment from Defendants Johnson, Hughes, and Creegold, and it was denied. (Doc. 31, at ¶ 33).

Although Plaintiff pursued a claim regarding the June 2018 alleged assault through all three levels of the prison grievance process, he did not include his claim for denial of medical treatment therein. *See* Ex. A, Doc. 38-3, at 10-11; Jenkins Aff., Doc. 38-2, at ¶ 12. Rather, he only asserted the named Defendants falsified documents and assaulted him. *See id.* Because Plaintiff failed to exhaust this claim, Defendants Johnson, Hughes, and Creegold are entitled to summary judgment thereon.

Retaliation Claim for Alleged Disciplinary Violations for Attempted Suicides

Plaintiff also brings a retaliation claim for alleged disciplinary violations related to his self-harm and suicide attempts. *See* Doc. 31, at ¶¶ 23-25, 53.

Although Plaintiff raised two informal complaints related to self-harm and disciplinary violations for suicide attempts, he did not pursue either beyond the first step of the administrative

11

exhaustion process. *See* Ex. A, Doc. 38-2, at 4, 25. As such, Defendants[6] are entitled to summary judgment on this retaliation claim.

Because Defendants have "establish[ed] the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Troche*, 814 F.3d at 798 (quoting Fed. R. Civ. P. 56(a)), they are entitled to summary judgment on the above claims.

Excessive Force Claims

This leaves remaining Plaintiff's two (at least arguably) properly-exhausted excessive force claims related to the events November 20, 2017 and June 18, 2018. Defendants contend they are entitled to summary judgment on these claims because Plaintiff has not provided evidence of a constitutional violation. The Court agrees.

The Eighth Amendment prohibits punishments that "'involve the unnecessary and wanton infliction of pain,' including inflictions of pain that 'are totally without penological justification.'" *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). An Eighth Amendment excessive force claim has subjective and objective components. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The subjective component focuses on whether the prison official used force in a "good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)); *see also Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) ("[t]he subjective component focuses on the state of mind of the prison officials"). "To determine such motivations on the part of correctional officers, courts should consider the reasons or motivation

---

6. Furthermore, Plaintiff's Amended Complaint does not specifically name any current Defendant to this case who he asserts took this retaliatory disciplinary action.

for the conduct, the type and extent of force applied, and the extent of inflicted injury." *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992).

The objective component requires the prisoner to prove "sufficiently serious" pain was inflicted. *Williams*, 631 F.3d at 383. "*[D]e minimis* uses of physical force" do not satisfy the objective component, as long as "the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Nevertheless, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Id.*

A significant injury is not the threshold requirement for an excessive force claim; instead, "[t]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Id.* at 7. In evaluating Defendants' actions, the Court is mindful that "prison officials 'must make their decisions in haste under pressure, and frequently without the luxury of a second chance.'" *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). Therefore, "[t]he issue is . . . not whether the force was absolutely necessary in hindsight, but whether the use of force could plausibly have been thought necessary". *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010).

Plaintiff claims excessive force was used against him twice: on November 20, 2017 and on June 18, 2018. Each is addressed below.

November 20, 2017 Incident[7]

Plaintiff alleges, around November 20, 2017, Plaintiff kicked a shelf in his cell, which made noise and drew the attention of Defendants Zimmerman, Poupard, and Wallace. (Doc. 31, at ¶ 21). He alleges Defendants responded by spraying mace through the food slot into his cell, then entering the cell, punching him in the groin, spraying mace again, handcuffing him, and dragging him to the medical unit. *Id*. He alleges he was struck by objects along the way, causing cuts and bruises. *Id.* He further alleges that after he was in the medical unit, he was slammed to the floor resulting in a bloody nose, bruising, and scratches. *Id*.

Defendants contend Plaintiff has not provided evidence of a constitutional violation. Upon review, the Court agrees.

First, Plaintiff has not responded to the motion and has presented no evidence in support of the version of events alleged in his Amended Complaint.

Second, on the undisputed evidence before the Court, there is no issue of material fact regarding the subjective component of an excessive force claim. Defendants have submitted evidence Plaintiff resisted officers' attempts to handcuff him, grabbed Defendant Wallace, and resisted officers' attempt to transport him to the medical unit. (Ex. C, Doc. 38-5, at 2-3); *see also* Sehlmeyer Aff., Doc. 38-1, at ¶¶ 5-6. They have further provided a medical examination report from immediately after the incident in question. *See* Ex. C, Doc. 38-5, at 18. That report indicates Plaintiff reported an assault on his groin, but on assessment, medical staff found "no swelling, lacerations, or discolorations." *Id.* Medical staff documented "a small cut on [the] left thumb", which was cleaned and covered with a band-aid. *Id.* Because prison officials must take immediate

---

7. The Court finds it at least arguable that Plaintiff exhausted this claim through the prison grievance process as he attempted to raise it to all three levels of the process. *See* Ex. A, Doc. 38-3, at 5-6, 21-22. As such, the Court addresses this claim on the merits.

14

action to maintain order, they are given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U.S. at 6 (internal quotation omitted). A consideration of the relevant factors – "the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury", *Caldwell*, 968 F.2d at 600 – demonstrates Defendants' actions were taken in "good faith effort to maintain or restore discipline" rather than "maliciously and sadistically for the very purpose of causing harm." *Williams*, 631 F.3d at 383 (quoting *Hudson*, 503 U.S. at 6).

The Court finds Defendants have pointed to evidence that the force used "could plausibly have been thought necessary" in this instance, and Plaintiff has presented no evidence to the contrary (and indeed, has presented no evidence at all). *Griffin*, 604 F.3d at 954; *see also Lockett v. Suardini*, 526 F.3d 866, 874-76 (6th Cir. 2008) (finding summary judgment appropriate on excessive-force claim where plaintiff alleged that he was attacked by guards with only enough force to almost break his eyeglasses and where plaintiff otherwise suffered only minor lacerations and cuts); *Johnson v. Unknown Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004) (denying a prisoner's excessive-force claim where the prison officers pushed him into his cell, pulled hard on his restraints, hurt his wrists, and tried to bend his thumb back, all in a "legitimate attempt to return him to his cell"); *Williams v. Johnson*, 55 F. App'x 736, 736-37 (6th Cir. 2003) (denying excessive-force claim where prisoner was being argumentative and the officer grabbed his arm and attempted to shove him into a closed door; this was determined to be a *de minimis* use of force reasonably related to a security need).

On the undisputed evidence before the Court, Defendants actions were taken in a "good faith effort to maintain or restore discipline", not "maliciously and sadistically for the very purpose

of causing harm." *Williams*, 631 F.3d at 383. As such, Defendants Zimmerman, Wallace, and Poupard are entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim regarding the November 20, 2017 incident.

<u>June 18, 2018 Incident</u>[8]

In his second excessive force claim, Plaintiff alleges Defendants Hughes and Creegold assaulted him on June 18, 2018 while he was receiving medical care. (Doc. 31, at ¶ 33). He alleges Hughes sprayed mace at his face, threw him to the floor, and jumped up and down on his back. *Id.* He further alleges that while Creegold held his ankles, Hughes sprayed mace in his rectum. *Id.*

Plaintiff has again failed to provide any admissible evidence to support the version of events set forth in his Amended Complaint. On the evidence before the Court, this claim also fails to meet the subjective component of an Eighth Amendment excessive force claim. Defendants have submitted evidence their actions were taken in response to Plaintiff lunging toward Nurse Johnson. *See* Doc. 38-6, at 4 (use of force investigation conclusion that Officers Hughes and Creegold[9] reacted to Plaintiff's actions by deploying mace, gaining control of Plaintiff, and placing him on the ground). Plaintiff has not provided any admissible evidence of injuries suffered, nor has he presented evidence of the version of events presented in his Amended Complaint[10], or to contradict that Defendants' use of force "could plausibly have been thought necessary", *Griffin*, 604 F.3d at 954. *See, e.g.*, *Davis v. Agosto*, 89 F. App'x 523, 525 (6th Cir. 2004) (use of mace to

---

8. Plaintiff properly exhausted this claim through all levels of the prison grievance system. *See* Ex. A, Doc. 38-3, at 10-11.

9. The Use of Force report identifies this officer as Officer "Creego". (Doc. 28-6, at 1). The Court assumes this is the same individual the Amended Complaint identifies as Officer Creegold.

10. In particular, there is no admissible evidence before the Court to support the more egregious allegations in Plaintiff's Amended Complaint that Officer Hughes sprayed mace in Plaintiff's rectum or jumped up and down on Plaintiff's back.

16

attain control of a prisoner not malicious or sadistic when made in a good-faith effort to restore discipline); *see also Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir 2002); *Hicks v. Goff*, 2019 WL 5685383, at *3 (S.D. Ohio) (dismissing excessive force claim where "Defendants could have reasonably perceived a serious threat that necessitated utilization of force, including their deployment of mace").

Again, a consideration of the relevant factors – "the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury", *Caldwell*, 968 F.2d at 600 – demonstrates Defendants' actions were taken in "good faith effort to maintain or restore discipline" rather than "maliciously and sadistically for the very purpose of causing harm." *Williams*, 631 F.3d at 383 (quoting *Hudson*, 503 U.S. at 6). As such, Defendants are entitled to summary judgment.

Qualified Immunity

In addition to the above arguments, Defendants raise the affirmative defense of qualified immunity. (Doc. 38, at 11-13). They assert Plaintiff has failed to show an Eighth Amendment violation, and even assuming *arguendo* that he could do so, he has not shown the right violated was clearly established at the time the force was used or that Defendants' actions were unreasonable. *Id.*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). There are two prongs to the analysis: (1) do the facts, viewed in the light most favorable to plaintiff make out a violation of a constitutional right; and (2) was that right clearly established at the time of the alleged misconduct. *Id.* at 232. A right is clearly

17

established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

Once a defendant properly raises a defense of qualified immunity, the burden shifts to plaintiff to demonstrate the defendant is not entitled to qualified immunity. *Livermore ex rel. Rohn v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). The bald assertion of qualified immunity is not sufficient to shift the burden, however. "A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority." *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013). Once a defendant has done so, "[t]he burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (citation and internal quotation omitted).

The Court finds Defendants have properly invoked qualified immunity on the excessive force claims here by putting forth facts to suggest they were acting within the scope of their discretionary authority and responding to maintain order as set forth above. And Plaintiff has presented no evidence or argument in response. Although the Court cannot grant summary judgment for Defendant simply because Plaintiff failed to respond because Defendant bears the burden on such a motion of the nonexistence of a material factual dispute, *E.M.A. Nationwide, Inc.*, 767 F.3d at 630, the proper assertion of qualified immunity shifts the burden of proof to plaintiff, *Livermore*, 476 F.2d at 403.

Because Plaintiff has failed to satisfy his burden in this regard – to show the law was clearly established such that it would have been "sufficiently clear that every reasonable official would have understood that [their actions] violate[d] that right", *Mullenix*, 577 U.S. at 11 – qualified immunity provides an additional (and alternative) basis for granting Defendants summary

18

judgment. *See, e.g.*, *Campbell v. Hines*, 2013 WL 7899224, at *4 (6th Cir.) ("[T]he district court properly declined to address the merits of Campbell's equal protection claim, because he failed to respond to the defendants' argument that they were entitled to qualified immunity."); *Winter v. City of Westlake*, 2018 WL 838283, at *9 (N.D. Ohio) ("Defendants have moved for judgment based on qualified immunity, contending they did not violate Plaintiffs' clearly established rights. . . . [T]he plaintiff has the burden of demonstrating the defendant is not entitled to qualified immunity. . . . Defendants have raised the defense and the Plaintiffs' failure to respond militates in favor of judgment for Defendants since Plaintiffs have not met their burden. Therefore, in the absence of any evidence of a constitutional violation and in the absence of any evidence or argument against Defendants' qualified immunity defense, the Court grants summary judgment for Defendants and against Plaintiffs on all Plaintiffs' federal claims."); *Allison v. Berrong*, 2009 WL 1874061, at *3 (E.D. Tenn.) ("Also, Plaintiff Allison's failure to respond to the motion to dismiss further demonstrates his failure to meet the burden necessary to defeat Defendant Berrong's qualified immunity claim in this case.").

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Summary Judgment (Doc. 38), be and the same hereby is, GRANTED; and the Court further

CERTIFIES pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

 *s/ James R. Knepp*
 UNITED STATES DISTRICT JUDGE